**UNITED STATES of America, Appellee,**

v.

**Kevin WHITE, Defendant–Appellant.**

**No. 941, Docket 91–1376.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 20, 1992.

Decided Nov. 19, 1992.

Richard A. Reeve, Asst. Federal Public Defender, New Haven, Conn., for defendant-appellant.

Anthony E. Kaplan, Asst. U.S. Atty., D.Conn., New Haven, Conn. (Albert S. Dabrowski, U.S. Atty., D.Conn., of counsel), for appellee.

Before: VAN GRAAFEILAND, KEARSE, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Kevin White appeals from a sentence imposed pursuant to a judgment of conviction entered in the United States District Court for the District of Connecticut, Warren W. Eginton, *Judge*, on May 31, 1991 after a jury trial. White was sentenced to a statutory minimum of twenty years imprisonment based upon a prior conviction for a felony drug offense, in accordance with 21 U.S.C. § 841(b)(1)(A) (1988 & Supp. II 1990).[1] *United States v. White*, 764 F.Supp. 254 (D.Conn.1991).

White asserts that this sentencing enhancement was improper because the government failed to file the information required by 21 U.S.C. § 851(a)(1) (1988) to trigger such enhancement "before trial," as mandated by that statute.[2] After an

---

**1.** Section 841(b)(1)(A) provides that in the case of certain drug offenses otherwise subject to a minimum term of imprisonment of ten years, "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years. . . ." It is undisputed that White committed violations that are subject to the § 841(b)(1)(A) enhancement, for he had previously been convicted in state court of the felony drug offense of possession of narcotics with intent to sell.

**2.** Section 851(a)(1) provides:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless *before trial,* or

initial filing with the office of the clerk of the district court in Bridgeport, Connecticut that was rejected by that office, the government filed the information a second time before the jury had been sworn or evidence taken, but after jury selection had occurred. The government contends, and the district court ruled, that the second filing occurred "before trial" within the meaning of § 851(a)(1). The government also argues that in any event, there was substantial compliance with the statute.

We conclude that the initial filing was erroneously rejected by the clerk's office, and remand for a determination whether that filing occurred "before trial."

## Background

On July 5, 1990, White was indicted on two counts by a federal grand jury sitting in the District of Connecticut. Count one of the indictment charged White with conspiring to possess with intent to distribute fifty grams or more of "crack" cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (1988). Count two charged White with employing a minor to distribute fifty grams or more of "crack" cocaine in violation of 21 U.S.C. § 845b (1988)[3] and 18 U.S.C. § 2 (1988). White's arrest and indictment resulted from a transaction on January 10, 1990 in which White directed the delivery of crack cocaine by a minor to an undercover police officer.

White was arraigned on July 19, 1990. At the arraignment, White was represented by counsel and entered a plea of not guilty. Prior to the entry of White's plea, the district court instructed the government's attorney to recite the penalties corresponding to the charges in the indictment. The

attorney explained that count one of the indictment generally carried a penalty of ten years to life for the conspiracy charged, but that in this case the mandatory minimum penalty was twenty years imprisonment because White had a previous conviction for drug trafficking. The government's attorney further stated that the penalty for count two of the indictment was also twenty years to life. Upon inquiry by the court, White responded that he understood the penalties that he faced if convicted of the charges contained in the indictment.

On September 5, 1990, the grand jury returned a three-count superseding indictment. In addition to recharging the counts stated in the initial indictment, the superseding indictment charged White with possessing with intent to distribute fifty grams or more of "crack" cocaine within 1000 feet of an elementary school in violation of 21 U.S.C. §§ 841(a)(1) and 845a(a) (1988)[4] and 18 U.S.C. § 2 (1988). On September 20, 1990, White was arraigned on the superseding indictment. As during the initial arraignment, White was represented by counsel, pled not guilty, and was explicitly advised that he confronted penalties of twenty years to life on each of the counts charged in the superseding indictment. Once again, White stated that he understood the charges and their corresponding penalties.

During the pendency of the prosecution, but well before trial, the government informed defense counsel of its intention to file a § 851 information. In the course of plea negotiations, however, government counsel indicated that if White agreed to

---

before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information

may be amended at any time prior to the pronouncement of sentence.

*Id.* (emphasis added).

**3.** Section 845b was renumbered as § 861 and amended by Pub.L. 101–647, Title X, §§ 1002(c), 1003(c), Title XXXV, § 3599L, 104 Stat. 4827, 4829, 4932 (1990).

**4.** Section 845a was renumbered as § 860 and amended by Pub.L. 101–647, Title X, §§ 1002(b), 1003(b), Title XII, § 1214, Title XV, § 1502, Title XXXV, § 3599L, 104 Stat. 4827, 4829, 4833, 4932 (1990).

plead guilty to count one of the superseding indictment, the government would forgo its right to file the § 851 information and seek enhanced punishment under § 841(b)(1)(A). Ultimately, the negotiations proved unavailing, and the government undertook to file the information.

On November 29, 1990, the government mailed the information for filing to the office of the clerk of the district court in Bridgeport, Connecticut. A copy of the information was also mailed that same day to White's trial counsel at the address stated in the docket sheet and the notice of appearance filed by that attorney.

On December 3, 1990, a jury was selected for trial, but was not sworn. The next day, the government received in the mail from the clerk's office the original unfiled § 851 information, with a notice that the information had not been accepted for filing because no address for the attorney of record appeared on the signature page of the information.

The government's brief on appeal asserts that failure to include the attorney's address was apparently deemed by the clerk to contravene D.Conn.Crim.R. 1,[5] which incorporates by reference twenty-one provisions of the District of Connecticut Rules of Civil Procedure, including D.Conn.Civ.R. 6.[6] The latter rule states in pertinent part that: "All pleadings must be prepared in

conformity with the Federal Rules of Civil Procedure.... Pleadings that do not conform to [this requirement] will not be accepted by the Clerk." Fed.R.Civ.P. 11 requires that: "Every pleading, motion, and other paper of a party represented by an attorney shall be signed by [the] attorney of record ..., *whose address shall be stated* (emphasis added)."[7] Thus, the omission of the attorney's address was apparently considered a violation of Fed.R.Civ.P. 11, incorporated via D.Conn.Civ.R. 6 in D.Conn.Crim.R. 1. There is nothing in the record that directly expresses the clerk's rationale for rejecting the initial filing; only the fact of rejection is clear.

Upon receipt of the rejected information, the government supplied the requisite address on the signature page and mailed the amended information that same day to the clerk's office. The information was received and filed by the clerk's office on the next day, December 5, 1990. White's counsel did not receive a copy of the information until December 11, 1990, evidently because counsel changed his address during the pendency of the case without notice to the court or opposing counsel.

On December 13, 1990, the jury was sworn and the presentation of evidence commenced. At the trial's conclusion, White was convicted on all three counts charged in the superseding indictment.

---

5. D.Conn.Crim.R. 1 provides:

Rules 2 (Admission of Attorneys), 3 (Discipline of Attorneys), 4 (Definitions), 6 (Preparation of Pleadings), 7(e) (Proof of Service), 7(f) (Sealed Documents), 9(a)1 (Motion Procedure), 9(b) (Motions for Extension of Time), 9(e) (Motions for Reconsideration), 12(c) (Examination of Jurors), 12(e) (Opening Statements), 12(f) (Secrecy of Jury Deliberations), 14 (Removal of Papers and Exhibits), 15 (Withdrawal of Appearance), 17 (Bill of Costs), 21 (Reporter's Fees), 22 (Remand by an Appellate Court), 30 (Recordings and Photographs), 31 (Sanctions Against Counsel), 32 (Auxiliary Orders), and 33 (Prohibition on Counsel as Witness) of the Local Rules of Civil Procedure shall also govern criminal proceedings in the District of Connecticut, as if said Rules were set forth fully in these Local Rules of Criminal Procedure for the District of Connecticut.

6. D.Conn.Civ.R. 6 provides:

All pleadings must be prepared in conformity with the Federal Rules of Civil Procedure.

Each such pleading shall be double-spaced, on 8½″ × 11″ paper with a left margin of at least 1″ free from all typewritten or printed material and shall have legibly typed, printed or stamped directly beneath the signature the name of the counsel or party who executed such document. The complete docket number, including the initials of the Judge to whom the case has been assigned, shall be typed on each pleading. The date of filing of each pleading shall be included in the case caption. Pleadings that do not conform to the foregoing requirements will not be accepted by the Clerk.

7. An amendment to Fed.R.Civ.P. 5(e) effective December 1, 1991, and therefore inapplicable here, provides that court clerks "shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices."

Prior to sentencing, White filed a motion to dismiss the § 851 information, contending that it was not filed "before trial" as required by the statute.

The district court denied White's motion. *White,* 764 F.Supp. at 255. The court noted that although § 851(a)(1) clearly requires that the information be filed before trial, the statute does not specify what event determines the commencement of trial. *Id.* Applying principles developed in the area of double jeopardy, the court concluded that a trial commences for § 851 purposes when the jury is sworn and jeopardy attaches, not when the jury is selected. *Id.* Because the § 851 information was filed and served before the jury was sworn, the court concluded that the government had complied with the statute, and denied White's motion. *Id.*

White was accordingly sentenced to the mandatory minimum sentence of twenty years pursuant to the § 841(b)(1)(A) enhancement. The court noted that had it not been bound by the mandatory minimum, it would have set sentence at fourteen years, the minimum of the applicable Guidelines range of 168 to 210 months.

This appeal followed.

## Discussion

■ White contends on appeal that the district court erred in its interpretation of § 851(a)(1) to permit filing of a § 851 information after jury selection.[8] The government defends the district court's statutory construction, and additionally contends that in any event, there was substantial compliance with the statutory filing requirement.

We initially address the issue of statutory construction. We next consider, *sua sponte,* the question whether the clerk properly rejected the initial § 851 filing. Responding in the negative, we do not

reach the government's argument as to substantial compliance, and remand for a determination whether the initial filing occurred "before trial" within the meaning of § 851(a).

### A. The Meaning of "Before Trial" in Section 851(a)(1).

Our interpretation of § 851(a)(1) must begin, of course, with the statute's language. *Mallard v. United States Dist. Court,* 490 U.S. 296, 300, 109 S.Ct. 1814, 1817, 104 L.Ed.2d 318 (1989). Section 851 provides that the required information must be filed "before trial," but does not specify the event which signifies the beginning of trial. The statute is accordingly ambiguous with respect to the issue presented for decision in this case. The parties agree, moreover, and the court concurs, that there is no relevant legislative history to assist our inquiry. Nor does the precise meaning of "before trial" become clear upon examination of the statutory context in which this phrase appears. *Cf. McCarthy v. Bronson,* —— U.S. ——, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991) ("statutory language must always be read in its proper context").

We accordingly turn for assistance to some familiar canons of statutory construction. One requires that we read this language as taking its "ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) (citing *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975)). A second instructs us that "[u]se of the same language in various enactments dealing with the same general subject matter ... is a strong indication that the statutes should be interpreted to mean the same thing." *Hargrave v. Oki Nursery, Inc.,* 646 F.2d

---

**8.** White argues that the government also failed to effect timely service upon White or his counsel, as additionally required by § 851(a)(1), because White's attorney did not receive the § 851 information until December 11, 1990, after the jury was selected. We reject this claim. Fed. R.Crim.P. 49(b) permits service upon a represented party's attorney "in the manner provided in civil actions." Fed.R.Civ.P. 5(b) provides that

service may be made by a mailing "to the attorney ... at the attorney's ... last known address," as clearly occurred here, and that "[s]ervice by mail is complete upon mailing." *See also* 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1148, at 430–31 (1987) ("[s]ince service is complete upon mailing, nonreceipt ... of the papers generally does not affect its validity").

716, 720 (2d Cir.1980). These maxims counsel us to seek guidance in analogous enactments and judicial decisions.

In *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Supreme Court addressed the question whether supervision of jury selection was a delegable duty under the Federal Magistrates Act, 28 U.S.C. § 636(b)(3) (1988). In the course of ruling that it was not, the Court made the following pertinent observations:

> Even though it is true that a criminal trial does not commence for purposes of the Double Jeopardy Clause until the jury is empaneled and sworn, *Serfass v. United States,* 420 U.S. 377, 388 [95 S.Ct. 1055, 1062, 43 L.Ed.2d 265] (1975), other constitutional rights attach before that point, see, *e.g., Brewer v. Williams,* 430 U.S. 387, 398 [97 S.Ct. 1232, 1239, 51 L.Ed.2d 424] (1977) (assistance of counsel). Thus in affirming *voir dire* as a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present, the Court wrote: " '[W]here the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins.' " *Lewis v. United States,* 146 U.S. 370, 374 [13 S.Ct. 136, 137, 36 L.Ed. 1011] (1892) (quoting *Hopt v. Utah,* 110 U.S. 574, 578 [4 S.Ct. 202, 204, 28 L.Ed. 262] (1884)). See *Swain v. Alabama,* 380 U.S. 202, 219 [85 S.Ct. 824, 835, 13 L.Ed.2d 759] (1965) (*voir dire* "a necessary part of trial by jury"); see also *Ricketts v. Adamson,* 483 U.S. 1, 3 [107 S.Ct. 2680, 2682, 97 L.Ed.2d 1] (1987); *United States v. Powell,* 469 U.S. 57, 66 [105 S.Ct. 471, 477, 83 L.Ed.2d 461] (1984). Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, *Rosales–Lopez v. United States,* 451 U.S. 182, 188 [101 S.Ct. 1629, 1634, 68 L.Ed.2d 22] (1981), *Ham v. South Carolina,* 409 U.S. 524 [93 S.Ct. 848, 35 L.Ed.2d 46] (1973), *Dennis v. United States,* 339 U.S. 162 [70 S.Ct. 519, 94 L.Ed. 734] (1950), or predisposition about the defendant's culpability, *Irvin v. Dowd,* 366 U.S. 717 [81 S.Ct. 1639, 6 L.Ed.2d 751] (1961). Indications that Congress likewise considers jury selection part of a felony trial may be gleaned, *inter alia,* from its passage in 1975 of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1982 ed. and Supp. V), and its placement of rules pertaining to criminal petit juries in a chapter entitled "Trial." See Fed.Rules Crim.Proc. 23, 24; cf. *id.,* Rule 43(a) (requiring defendant's presence "at every stage of the trial including the impaneling of the jury").

*Id.* 490 U.S. at 872–73, 109 S.Ct. at 2245–46 (footnote omitted).

The understanding that a "trial" encompasses voir dire is also supported by judicial decisions construing two other statutes whose enforcement calls for resolution of this issue. Under the Speedy Trial Act, 18 U.S.C. § 3161 (1988) *et seq.,* which provides a mandatory timetable for the conduct of criminal trials, courts have consistently regarded jury selection as the commencement of trial. *United States v. Fox,* 788 F.2d 905, 908 (2d Cir.1986) (collecting cases); *United States v. Gonzalez,* 671 F.2d 441, 443 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); cf. *United States v. Stayton,* 791 F.2d 17, 19–21 (2d Cir.1986) (unreasonable post-voir dire delay in proceeding to trial may result in violation of Speedy Trial Act). The federal criminal removal statute, 28 U.S.C. § 1446(c)(1) (1988), which authorizes the filing of a petition for removal "before trial," has also been construed to include voir dire within the meaning of the term "trial." *New Jersey v. Chesimard,* 555 F.2d 63, 65 n. 1 (3d Cir.1977) (in banc); *United States ex rel. Walker v. Gunn,* 511 F.2d 1024, 1026–27 (9th Cir.), *cert. denied,* 423 U.S. 849, 96 S.Ct. 91, 46 L.Ed.2d 72 (1975).

■ In light of this general understanding that the term "trial" includes jury selection, we believe that the district court's reliance upon decisions involving double jeopardy principles was misplaced. The basis for the court's decision was that: "A trial begins and jeopardy attaches when the jury is sworn, not when the jury is selected." *White,* 764 F.Supp. at 255 (citing

*United States v. Wedalowski*, 572 F.2d 69 (2d Cir.1978)). This is clearly a correct statement of double jeopardy doctrine, *see Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *United States v. DiLapi*, 616 F.2d 613, 614 (2d Cir.1980) (per curiam), but we do not regard that body of law as controlling the issue presented for decision in this case.

■■■ The Double Jeopardy Clause protects an individual from twice being subject to the risk of a determination of guilt. *Serfass*, 420 U.S. at 391–92, 95 S.Ct. at 1064–65. That risk comes into play only when "a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" *Id.* at 391, 95 S.Ct. at 1064 (quoting *Kepner v. United States*, 195 U.S. 100, 133, 24 S.Ct. 797, 49 L.Ed. 114 (1904)). Accordingly, the risk associated with trial does not occur, and jeopardy does not attach, until the jury has been empaneled and sworn, and is thus competent to dispense a judgment of guilt. These considerations are inapposite to our inquiry under § 851(a)(1), which requires that we determine when the trial begins, not when the defendant's exposure to the risk of a guilty verdict begins. Put another way, the Constitution protects against "double jeopardy," not "double trial," and the attachment of jeopardy does not occur at the commencement of the trial as "trial" is otherwise commonly defined.

■■■ Our interpretation of § 851(a)(1) finds support in *United States v. Johnson*, 944 F.2d 396 (8th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991), — U.S. ——, 112 S.Ct. 983, 117 L.Ed.2d 146 — U.S. ——, 112 S.Ct. 2951, 119 L.Ed.2d 574 (1992), in which the Eighth Circuit held that "section 851 requires filing before jury selection begins," *id.* at 407; and in *Arnold v. United States*, 443 A.2d 1318, 1323–27 (D.C.1982), so construing the phrase "prior to trial" in an analogous provision of the District of Columbia Code. *Cf. United States v. Brown*, 921 F.2d 1304, 1309 n. 6 (D.C.Cir.1990) (declining to address issue); *United States v. Jordan*, 810 F.2d 262, 268–69 (D.C.Cir.) (information

filed before voir dire timely under § 851), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987). *But cf. United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir.1990) (information served on defendant and counsel before voir dire, but filed with court after trial began, complied with § 851), *cert. denied*, — U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991).

The *Johnson* court stressed the need to "allow[ ] the defendant ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequences of a potential jury verdict." 944 F.2d at 407. The *Arnold* court expressed a similar view, based heavily upon legislative history underlying the local enactment at issue in that case. 443 A.2d at 1324–26. This rationale reinforces the conclusion that we reach via a review of the pertinent case law.

We conclude that the phrase "before trial" in § 851(a)(1) means before the commencement of jury selection. We next address the question whether a § 851 information was filed "before trial" in this case.

B. *The Validity of the Section 851 Filing.*

As noted earlier, the clerk's office rejected the government's initial filing of the § 851 information. For the reasons hereinafter stated, we believe that this rejection was unauthorized. It follows that if the initial filing occurred "before trial" within the meaning of § 851(a)(1), we may affirm the judgment of the district court on that ground, despite our disagreement with its statutory analysis.

This conclusion follows from the familiar rule that we may affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely. *Cromwell Assocs. v. Oliver Cromwell Owners, Inc.*, 941 F.2d 107, 111 (2d Cir. 1991); *In re Chesley v. Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir.1991); *Larsen v. NMU Pension Trust*, 902 F.2d 1069, 1070 n. 1 (2d Cir.1990); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987). We ultimately conclude, however, that the

record on this appeal does not permit a determination as to when the initial filing was completed, and remand for determination of that issue.

■ Although the government does not take direct issue with the clerk's rejection of the initial filing of the § 851 information, we perceive no valid basis for that rejection. While, as indicated earlier, the record contains no explicit statement by the clerk's office of the rationale for its action, it was premised upon the failure to include the attorney's address below the signature on the § 851 information. No suggestion has been made of any source other than Fed.R.Civ.P. 11 for this requirement, or of any basis for the applicability of Rule 11 other than its incorporation by reference into D.Conn.Crim.R. 1 via D.Conn.Civ.R. 6. *See supra* notes 5–6 and accompanying text. (Ironically, Civ.R. 6 directly requires only that pleadings "have legibly typed, printed or stamped directly beneath the signature *the name of the counsel* or party who executed such document [emphasis added].")

This is not a plausible reading of the operation of the local rules. D.Conn. Crim.R. 1 incorporates by reference twenty-one provisions of the local civil rules, including D.Conn.Civ.R. 6, which in turn requires "pleadings" to be "prepared in conformity with the Federal Rules of Civil Procedure." Fed.R.Civ.P. 7(a) defines the "[p]leadings [a]llowed" under the Federal Rules of Civil Procedure, and there is of course no mention of indictments or informations. Thus, the only remaining basis for subjecting the § 851 information in this case to the requirements for pleadings would be Fed.R.Crim.P. 12(a), which provides in pertinent part: "Pleadings in criminal proceedings shall be the indictment and the information, and the pleas of not guilty, guilty and nolo contendere."

■ However, any claim that Rule 12(a) pleadings should be deemed (by operation of D.Conn.Crim.R. 1 and D.Conn.Civ.R. 6) subject to the requirements imposed upon the preparation of pleadings by the Federal Rules of Civil Procedure will not withstand analysis. This would mean that indict-ments, informations, and pleas of guilty, not guilty, and nolo contendere must, *inter alia,* include a short and plain statement of the pleader's claim and a demand for judgment, Fed.R.Civ.P. 8(a); contain a caption including "a designation as in Rule 7(a)," *id.* 10(a); and be subject to the sanctions imposed by Fed.R.Civ.P. 11 for unjustified pleadings. Further, superceding indictments, and perhaps withdrawal of guilty pleas, would presumably be governed by the provisions of Fed.R.Civ.P. 15 regarding amended and supplemental pleadings.

In this case, the clerk of the court imposed upon a § 851 information the requirement stated in Fed.R.Civ.P. 11 that the signing attorney's address be stated. The necessary premise that Rule 11 applies to the preparation of criminal law pleadings leads, however, to particularly bizarre results. A prosecutor could be subjected to Rule 11 sanctions for signing an unjustified indictment or information, directly athwart the doctrine of prosecutorial immunity. An indictment or information might be premised upon "a good faith argument for the extension, modification, or reversal of existing law," Fed.R.Civ.P. 11, a manifest due process violation and an affront to the rule of lenity. *Cf.* Fed.R.Crim.P. 7(c)(1), which requires a statement of the violated "statute, rule, regulation or other provision of law" supporting each count of an indictment or information. A criminal defendant could be sanctioned for a frivolous plea of not guilty, contravening both the Sixth Amendment right to a speedy and public trial and the Fifth Amendment right not to be deprived of life or liberty without due process of law.

■ Neither Rule 11 in particular nor the Federal Rules of Civil Procedure are designed for such anomalous applications. The Federal Rules of Civil Procedure "govern the procedure in the United States District Courts in all suits *of a civil nature.*" Fed.R.Civ.P. 1 (emphasis added); *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 391, 110 S.Ct. 2447, 2453, 110 L.Ed.2d 359 (1990). There are instances of incorporation by reference of a specific provision of the federal civil rules in federal

criminal procedure. *See, e.g.,* Fed. R.Crim.P. 49(d) ("Papers shall be filed in the manner provided in civil actions."). Clearly, however, the catchall D.Conn. Crim.R. 1 should not be read to effect a wholesale incorporation of the pleading requirements of the federal civil rules into local criminal practice, and would be invalid if construed to do so. *Cf. United States v. Burdette,* 161 F.Supp. 326, 331-32 (E.D.Mich.1957) (rejecting motion for psychiatric examination pursuant to Fed. R.Civ.P. 35 in criminal case), *aff'd,* 254 F.2d 610 (6th Cir.1958) (per curiam), *cert. denied,* 359 U.S. 976, 79 S.Ct. 887, 3 L.Ed.2d 842 (1959).

 The Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the courts of the United States." Fed.R.Crim.P. 1. Local rules implementing the Federal Rules of Criminal Procedure may not be inconsistent with the federal rules. 28 U.S.C. § 2071(a) (1988); Fed.R.Crim.P. 57; *see also Williams v. United States Dist. Court,* 658 F.2d 430, 434-37 (6th Cir.) (invalidating local rule inconsistent with Federal Rules of Civil Procedure), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *McCargo v. Hedrick,* 545 F.2d 393, 401-02 (4th Cir.1976) (same). Further, a construction of a local rule that creates a conflict with a federal rule should be avoided. *McKinney v. Dole,* 765 F.2d 1129, 1135 n. 12 (D.C.Cir.1985); *John v. Louisiana (Board of Trustees for State Colleges & Univs.),* 757 F.2d 698, 707 (5th Cir.1985); *Gerritsen v. Escobar y Cordova,* 688 F.Supp. 556, 558 (C.D.Cal.1988).

The requirements for an indictment or information are covered by Fed.R.Crim.P. 7(c)(1), which calls for such instruments to "be signed by the attorney for the government," but includes no provision for the statement of the signer's address. Furthermore, the universal practice is that indictments and informations do not include a statement of the United States Attorney's address. The Appendix of Forms to the Federal Rules of Criminal Procedure has been abrogated as unnecessary; forms of indictment and information are made avail-able to United States Attorneys' offices by the Department of Justice. Fed.R.Crim.P. Appendix of Forms advisory committee's note. We understand that none of these forms include the address of the United States Attorney. Nor did prior Forms 1 through 11, which were forms for indictments (1-10) and an information (11). *Cf.* Form 29 to the Federal Rules of Civil Procedure (calling for provision of address of United States Attorney in civil complaint in accordance with Fed.R.Civ.P. 11).

Given the universal practice in this regard, we strongly doubt that the District of Connecticut could adopt a rule requiring that the government attorney's address be stated in an indictment or information. We note that there is no counterpart in the Federal Rules of Criminal Procedure to Fed.R.Civ.P. 5(e), *see supra* note 7; thus, violation of such a rule could warrant rejection of an attempted filing of an indictment or information, an especially untoward result in the era of the Speedy Trial Act. Further, as outlined earlier, there is no coherent way to interpret the combined operation of the federal and local rules to impose the "address" requirement of Rule 11 upon indictments and informations without imposing all the pleading requirements of the federal civil rules upon such instruments. We are persuaded that the local rules of the District of Connecticut do not intend such a result, and in any event are not authorized to effect it.

We therefore conclude that the court clerk had no valid basis to reject the initial filing of the § 851 information in this case, and accordingly that the issue of the government's compliance with § 851(a)(1) must be resolved by reference to that initial filing. It is not clear on this appellate record, however, whether the initial filing occurred "before trial" within the meaning of § 851(a)(1); i.e., before jury selection. The record includes an affidavit that the § 851 information was mailed by the U.S. Attorney on November 29, 1990 and received back from the clerk on December 4, 1990, whereupon the Assistant United States Attorney's address and telephone number were inserted below his signature and the information was mailed to the clerk's office

a second time. There is no specific indication, however, whether the clerk received the initial mailing prior to jury selection on December 3, 1990. The information is stamped only as filed at 11:56 a.m. on December 5, 1990, obviously reflecting the second mailing and receipt of the § 851 information. Since filing requires " 'delivery of papers into the actual custody' " of the clerk, *Greenwood v. New York Office of Mental Health*, 842 F.2d 636, 639 (2d Cir.1988) (quoting *In re Gubelman*, 10 F.2d 926, 929 (2d Cir.1925)); *see also* Fed. R.Crim.P. 49(d); Fed.R.Civ.P. 5(e), we must remand for a determination as to the time of actual receipt of the initial § 851 information by the court clerk.

### Conclusion

The sentence imposed in this case is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

KEARSE, Circuit Judge, dissenting:

In order to seek a mandatory minimum sentence of 20 years' imprisonment for defendant Kevin White, the government was required by 21 U.S.C. § 851 (1988) to file a special information "before trial." I agree with the majority that the district court erred in ruling that trial commenced within the meaning of § 851 only when the jury was sworn, not when voir dire began. But I cannot agree that there is a question as to whether the § 851 information was actually filed prior to the commencement of voir dire (it was not) or whether the clerk of the court had the authority at the time in question (he did) to refuse to file it for lack of compliance with the district court's local rules. And as I am unable to conjure up a reason why, especially when six years of imprisonment is at stake, Assistant United States Attorneys in Connecticut, like all other attorneys practicing in the federal court in that state, should not be required to be familiar with court rules and to comply with them, I would vacate the judgment of the district court and remand for resentencing.

### A. *The Address Requirement*

An affidavit submitted by the government in the district court concedes that the following occurred. The New Haven office of the United States Attorney for the District of Connecticut mailed the § 851 information on November 29, 1990, to the federal courthouse in Bridgeport. On December 4, 1990, the New Haven office of the United States Attorney received the information back in the mail, along with a notice from the Bridgeport clerk's office stating that the information had been returned because there was no address listed for the Assistant United States Attorney who had signed it. An address was then added to the information and it was mailed back to the court, where it apparently was received and filed on December 5. In its brief on this appeal, the government acknowledges that voir dire for jury selection in this case began on December 3, 1990, and that the information was filed in the clerk's office on December 5.

Although the Federal Rules of Civil Procedure do not apply to a criminal proceeding of their own force, there is no jurisprudential reason why a promulgating body cannot adopt some of those rules for application to criminal proceedings. Rule 49(d) of the Federal Rules of Criminal Procedure, for example, does precisely that, stating that "[p]apers shall be filed in the manner provided in civil actions."

The Rules of the United States District Court for the District of Connecticut ("Local Rules") in 1990 provided that certain of the Federal Rules of Civil Procedure applied to criminal proceedings. In particular, Local Criminal Rule 1 incorporated Local Civil Rule 6, which dealt with preparation of "pleadings" and provided that "[a]ll pleadings must be prepared in conformity with the Federal Rules of Civil Procedure." Rule 11 of the Federal Rules of Civil Procedure required that all pleadings bear, *inter alia*, the pleading party's attorney's address.

An information, under the terms of the Federal Rules of Criminal Procedure, is a pleading. *See* Fed.R.Crim.P. 12(a) ("[p]leadings in criminal proceedings" in-

clude "the indictment and the information"). There is no provision in the Federal Rules of Criminal Procedure requiring that indictments or informations include the prosecuting attorney's address; but since there is also no provision stating that an address is not required, a local rule requirement of an address is not inconsistent with the national rules. The district court is therefore authorized to adopt a rule that requires an address. *See* Fed.R.Crim.P. 57 (district courts expressly empowered to adopt local rules imposing additional procedural requirements for criminal proceedings so long as they are "not inconsistent" with the Federal Rules of Criminal Procedure); *see also* Fed.R.Civ.P. 83 (similar power with respect to rules for civil proceedings). Thus, the Connecticut district court's local rule's address requirement permissibly applied to the § 851 information.

At the time in question, Local Civil Rule 6 also stated that "[p]leadings that do not conform to the foregoing requirements will not be accepted by the Clerk." Though this rule has been changed in order to avoid inconsistency with a recent amendment to the national rules, *see* Fed.R.Civ.P. 5(e) (effective December 1, 1991, "[t]he clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices"), there was no such national rule provision in December 1990 when the events at issue here occurred.

Notwithstanding the majority's parade of hypothetical horribles that could result from incorporation of substantive aspects of Fed.R.Civ.P. 11, the present case involves only the nonsubstantive requirement that an attorney list his address on a pleading. The government's first § 851 information did not bear the Assistant United States Attorney's address. Following the above local rules, therefore, the clerk did not accept it for filing. Far from performing an act that was *ultra vires*, the clerk of the district court applied the authorized rules of the district court.

## B. *The Government's Harmless–Error Contention*

The government, far from denying that the § 851 information was not in fact filed prior to the commencement of voir dire, has urged, both here and in the district court, that the clerk's rejection was based on a hypertechnicality, and that if filing before voir dire was required, its untimeliness should be excused as harmless. In making this argument, the government relies on *United States v. Duhart,* 269 F.2d 113 (2d Cir.1959), in which we held that the government's failure to timely file an information under a predecessor to § 851 was harmless error. The government's reliance is misplaced, however, because § 851 is significantly different from its predecessor.

The predecessor section, 26 U.S.C. § 7237 (Supp. IV 1956), provided that if the defendant had prior convictions for specified narcotics offenses, then "[a]fter conviction (but before pronouncement of sentence) ... the court shall be [so] advised," and "the United States attorney shall file an information setting forth the prior convictions." 26 U.S.C. § 7237(c)(2). We noted that this section "was intended to protect a defendant from the effect of prior offenses incorrectly charged." 269 F.2d at 116 (applying section in effect at time of decision, which was substantively identical to section in effect at time of sentencing). Section 7237 was silent, however, as to the consequences of nonfiling of the information prior to imposition of sentence, and we ruled that since Duhart and his attorney had admitted several times during trial that he had such prior convictions, the government's failure to file the § 7237 information prior to his initial sentencing was harmless error. We also noted that, if that failure were not to be considered harmless, the district court had the power to vacate the original sentence and reimpose the same enhanced sentence following a filing of the required § 7237 information.

Section 851 is different in two material respects. First, its requirement that the enhanced penalty information be filed prior to, rather than after, trial gives the defendant more options than merely contesting

the existence of prior convictions. For example, after the stakes have been raised by the timely filing of a § 851 information, the defendant could decide to plead guilty prior to the empaneling of the jury and perhaps thereby improve his chance of receiving a reduction in sentence for acceptance of responsibility. *See* Guidelines § 3E1.1 Application Notes 2, 3 (eff. Nov. 1, 1990) (such a reduction more likely to be available to defendant who pleads guilty prior to the commencement of trial). Section 7237, requiring only a posttrial filing, allowed the defendant only to contest the accuracy of the prior-convictions allegation. Second, unlike § 7237, § 851 specifies the consequences of a failure to effect a timely filing, stating that *"[n]o person* who stands convicted of an offense under this part *shall be sentenced to increased punishment* [on account of prior convictions] *unless"* the information is filed before trial or before a plea of guilty. 21 U.S.C. § 851(a) (emphasis added). The language of § 851 is thus absolute in terms of the consequences of failure to file the information before trial. Further, the strictness of Congress's focus on the start of trial as the time for filing the § 851 information is reinforced by the provision in that section for leeway if the government is unable with due diligence to marshall the facts regarding prior convictions before trial: in such circumstances, § 851 provides that the court may briefly "postpone the trial," not that it may deem tardiness harmless.

In imposing sentence in the present case, the district court stated that but for the § 851 information, it would have sentenced White to a prison term of 14 years. In light of the fact that the § 851 information was not timely filed, I would vacate the 20-year sentence actually imposed and remand to the district court for resentencing.